This Court has held that when a plaintiff alleges judicial deception in a civil rights action, the standard for qualified immunity is that the plaintiff has to make a substantial deliberate falsehood, reckless disregard for the truth, or omission of material fact, and the plaintiff also has to show that for the dishonesty, the probable cause would not exist. If the plaintiff is able to meet both these requirements, the defense of qualified immunity is lost. Now, the trial court erred because it concluded as a matter of law that probable cause existed. If the trial court viewed the facts in the light most favorable to the moving party instead of the nonmoving party, which the trial court was supposed to do, and as a result, the trial court made findings that was in favor of the moving party, if the trial court viewed the facts in the light most favorable to the nonmoving party, Mr. Hamre, the trial court should have found that Mr. Hamre walked towards the officer and asked in a raised tone of voice, who called you? He then came to a complete stop and stood there and did not make any motion when the officer responded, I can't provide you that information. Mr. Hamre, still standing there, responded, that's bullshit, and then began to complain about the fact that he knew it was his next-door neighborhood called the police. While Mr. Hamre is standing there complaining, Mr. Hamre is standing approximately 18 feet away from the officer when the officer reaches for his gun and orders Mr. Hamre to drop the hammer that was hanging between his finger. Mr. Hamre complies, opens up his fingers, and lets the hammer drop. Mr. Hamre asks the officer whether he has a warrant and orders the officer off his property. Approximately seven weeks later, the officer drafts up a police report, which is a complete fabrication of the events that took place that day. In his report, the officer writes that Mr. Hamre advanced towards and got to within 10 to 15 feet when he pulled out from behind his back a hammer and started waving it in a back-and-forth fashion. The officer's report further states that Mr. Hamre continued to advance towards the officer while the officer was repeatedly telling Mr. Hamre to drop the hammer. The report further states that the officer started backing away to increase the distance, and at this time, as Mr. Hamre continued to advance towards the officer, the officer reached for his gun and ordered Mr. Hamre to drop the hammer, too, at which time Mr. Hamre dropped the hammer. That's the facts presented by the defendant. The facts presented by Mr. Hamre and all the witnesses there that day stated that Mr. Hamre was standing still approximately 18 feet away. If Mr. Hamre is standing 18 feet away and not making any motions towards the officer, and he's just standing there complaining about his neighbor and not challenging the officer or making any threats towards the officer, I believe Mr. Hamre has made a substantial showing that there was deliberate falsity in the police report. The next question would be whether, but for the dishonesty, probable cause would exist. And viewing the facts in the light most favorable to Mr. Hamre, probable cause would not exist. The trial court should have found, as a matter of law, that probable cause did not exist because Mr. Hamre was charged with fourth-degree assault. And the court – the element – the prerequisite element for fourth-degree assault is intent to create apprehension of harm. If Mr. Hamre is standing approximately 18 feet away, not making any motions at the officer, just standing there complaining about his neighbor, the court should have found that, based on that, probable cause did not exist to charge Mr. Hamre with fourth-degree assault. And it was – it was error for the trial court to conclude otherwise. With regards to the – this Mr. Hamre's State law claims, the trial court also erred by concluding, as a matter of law, that probable cause existed. Under Washington law, the Washington Supreme Court has stated that – that if there's an issue of fact as to whether or not probable cause exists, the matter must be submitted to the jury. The Washington Supreme Court reiterated this holding in the case of Bender v. City of Seattle, which was a case where the investigating officer failed to fully disclose to the prosecuting attorney all the relevant facts within – within his knowledge. As a result, the prosecuting attorney brought charges against – against Mr. Bender based on the partial information he had, believing that there was probable cause. The Supreme Court stated that – the State Supreme Court stated that if any issue of fact as to whether or not the prosecuting witness fully and truthfully disclosed all the relevant information within his knowledge to the prosecuting attorney, then such issue of fact must be submitted to the jury with proper – proper instructions from the court as to what will constitute probable cause, and the existence or nonexistence of probable cause must then be determined by the jury. Again, the trial court erred by concluding that probable cause existed when the State law claims for false imprisonment, false arrest, and malicious prosecution – malicious prosecution should have been submitted to the jury. With regards to the – our claim for the negligent infliction of emotional distress, the trial court erred – we believe it was abusive discretion by concluding that Mr. Hamrick did not have objective medical evidence. The reason we didn't present any objective medical evidence in the Sermon on Judgment hearing was because the defendants never raised that as an issue. In our brief, we indicated that we weren't challenging the – we weren't going to argue anything about the negligent infliction of emotional distress because there was nothing in the brief about the negligent infliction of emotional distress. The – Mr. Hamrick was seen by two psychiatrists and counselors regarding emotional distress that he felt after the arrest, the possibility that he was going to lose his job. We believe that there is sufficient objective medical evidence for a jury to determine whether there was negligent infliction of emotional distress, especially if there is no probable cause on this issue. Thank you. Before you sit down, I do have one question. You had a Monell claim as well against the city itself. Yes. And I just want to verify, had discovery been stayed? Yes. Pending the outcome of the court's ruling on qualified immunity? We did a little bit of discovery. What discovery did you do regarding Monell liability? We sent out interrogatories and requests for protection, and I was able to go over to the police department and review some manuals and stuff like that. During that time, after the interrogatories and requests for protection, the opposing counsel had moved for stay based on qualified immunity. The trial court granted the stay pending the decision on the qualified immunity, and I filed a motion for reconsideration basically stating that the Monell claims are not – should not be stayed because there's no qualified immunity defense for the city. The trial court took it under advisement and asked opposing counsel or asked the defendants to file a response. But by that time, while the decision was pending, the motion for summary judgment on – for the qualified immunities was brought, and the trial court decided that it was What other evidence were you looking for with respect to Monell liability? Well, the other – what we were trying to establish was that the city was aware that this officer wasn't prepared. The facts aren't clear, but the officer had been on – had joined the police force for only three months before this incident occurred. And we were trying to establish – So it was an inadequate training claim? Exactly, yes. And we – based on what information we had obtained, and I think I provided in the there are documents where the training officers stated that this officer wasn't good with dealing with citizens. We never presented that – well, we presented that to the trial court, but the trial court disregarded that and claimed that because there was probable cause, there was no Monell claims. Thank you. Thank you. May it please the Court. Richard Jolly on behalf of Officer Eric White and the city of Bothell. We readily concede that there are some disputed facts in this case. The exact manner in which Mr. Hamrey is holding the hammer. Does he have it by the head? Then it sounds like the district court got this wrong. Well, Your Honor – You're supposed to look at the facts in the light most favorable. Regardless of the man – So if there's a dispute in the facts, under Sasse v. Katz, you take the facts provided, the version provided by the nonmoving party. The exact manner in which Mr. Hamrey is holding the hammer is not material to determine or is not material in determining whether he posed a threat or whether an officer could reasonably conclude that he posed a threat. We submitted the declaration of a defensive tactics instructor who said that whether he's within 21 feet as they are trained at the police academy, that he's within this circle of danger. He can easily convert the hammer into a weapon by either throwing it or by sliding his hand down the handle in a split second. And so that's not a material fact. There's also a dispute about the exact – Well, it's certainly arguable. But I take it you agree that the district court made a major error when it says the hammer was held at or near the head. That was just wrong, was it not? That was a fact contrary to the plaintiff. No, Your Honor. That's the facts most favorable to the plaintiff. Because what the police officer says is that Mr. Hamrey's got the hammer by the handle where he can brandish it and use it more easily. If he's holding it by the head, he's got to move his hand down the handle or he's got to throw it at him. By saying that he's holding the hammer by the head, that's the facts most favorable to the plaintiff. And that's actually what they're asserting, that Mr. Hamrey had the handle of the hammer or, excuse me, the head of the hammer. Isn't that funny? I read it as though it was near the policeman's head. But you're saying it's where his hand was on the – The head of the hammer, Your Honor, rather than on the handle. And that is assuming the facts most favorable to the plaintiff. Right. But the fashion that he's holding the hammer – I think there are facts in dispute. What everybody said, the tone of the conversation. There's witnesses that say one set of circumstances, a nonthreatening set occurred, and witnesses that say a threatening set occurred. It seems to me, reading this whole opinion, and not just with respect to the hammer, that the judge just became the finder of fact in this case. And these are disputed facts, and it should go to the jury. Your Honor, we would submit that, based on the record, the exact content of Mr. Hamrey's profanity-laced barrage is not material. And the fact that he's cussing is only material in that he's angry. And he's not disputing that. All of the witnesses, Mr. Hamrey, his wife, and his brother-in-law. Why would he be angry without being threatening? Well, Your Honor – And wouldn't you be angry if your neighbor was calling in the cops on you because you're doing a construction project? No, Your Honor. Actually, I turned the music down. So you wouldn't get upset about that at all? I certainly wouldn't direct that at Officer White. But that's in dispute, whether the anger is directed at Officer White. Can you stay behind the podium, please? This is odd. Stay behind the podium. Thank you. Your Honor, whether Mr. Hamrey is directing the language at Officer White or just talking about his neighbor, the only reason that the profanity is material is because a police officer is trained to evaluate the demeanor of someone that he's dealing with. If Mr. Hamrey comes out and talks to him in a measured fashion, he's not going to be as concerned about his own safety. And we would submit that even though there are facts in dispute, that based on a qualified immunity analysis, you can conclude, or you should conclude, that Officer White could have believed that he was in fear for his safety. How do you account for the substantial delay before there was any attempt to do anything about this? Your Honor, Officer White was a new officer on the force. He'd only been there a couple of months. He went back to the department. He and his sergeant talked about this. And he decided to go ahead and file the charges. And how much later did that come? I believe it was six or seven weeks later. I mean, that's sort of incredible, isn't it? I just I mean, if he'd been a solid and it takes six or seven weeks to come to the conclusion he's been a solid? No, Your Honor. That's not what There's nothing in the record that says that Officer White didn't conclude that he had been assaulted seven weeks after the fact. They didn't do anything about it for six or seven weeks. Your Honor, whether that reflects on Officer Whether Officer White's entitled to qualified immunity, we will It's the sort of thing a jury would like to think about, I think. I mean, I don't quite understand why the judge short-circuited the jury. Your Honor, can we say here that when a man who is angry, and the record is uncontroverted on that, who's got a hammer in his hand, and we can all agree that a hammer is a potentially lethal weapon, and when he's coming at the officer and he scares the officer enough that he does unsnap his holster, can we say that only someone who is plainly incompetent I don't know whether it's scared or he's just a hot-tempered officer. I mean, that's another one of these things. There wasn't enough to convict him in court where these facts were tried. And that's the other weakness of your case, that once there was a trial, they couldn't prove it. Your Honor, based on the record, what the trial judge concluded was that Officer White was afraid, and that is part of the record, and the way Mr. Henry was acting was obviously something that would raise eyebrows. The question was whether the intent was there to scare Officer White. Well, that's a rather important fact. Your Honor, again, the standard for qualified immunity is Officer White knowingly violating the law here by The very fact that they couldn't prove it in the assault case means that there's a lot of ambiguity in these facts. The jury could understand them in different ways. We read them and you can see they either You may have a perfectly plausible case for him. I don't say you won't, but I just find it very hard to see a judge deciding The record, based on what Mr. Henry testified to, what his brother-in-law testified to, and what his wife testified to, it's uncontroverted that Officer White tells him to put the hammer down. We know he doesn't do it immediately because Officer White, or excuse me, Mr. Henry's brother-in-law also chimes in and says, hey, drop the hammer. And if we're to view whether or not Officer White's entitled to immunity from the three times. Now, whether Mr. Henry I'm sorry, Your Honor? We look at the facts in light most favorable to the non-moving party. And we follow the Saussure analysis. We would concede that, Your Honor, but And one other fact that Judge Noonan, I'd just like to add to what Judge Noonan said, was according to Henry, his wife, and I guess it was his brother-in-law, McDaniel That's correct, Your Honor. At the end of the incident, they testified that, or they claim or stated in their affidavits that the officer said, I've had enough of you. I'll deal with you later. And that right We have to take that version according to Mr. Hammer. And that's true, Your Honor, but the fact that he makes that statement doesn't rise to the level of some constitutional deprivation, and it doesn't change Well, it could reasonably infer from that that he was going to get back at Mr. Henry for mouthing off at him. Well, Your Honor, even if that is one of his motivations, based on just what the record is, a reasonable officer can conclude that when somebody's coming at them with a hammer, and whether Mr. Henry wants to concede that going from 30 feet to 15 feet is advancing or not, he is coming closer to him with the hammer, he is angry, and it scares Officer White. Your Honor, just briefly, on the other claims. There's no nexus between Mr. Henry's arrest and any actions by Officer White. Mr. Henry was arrested because he failed to appear in court. And that But the claim was made that the order wouldn't have gone out except for the probable cause statement of Officer White. There was some nexus. I'm afraid you're going to have to try them all. All right. Thank you, Counsel. I don't think. Thank you, Counsel. And Hemry v. Bothell be submitted. The next case, Kumar v. Ashcroft, has been submitted on the briefs, and we will take a direct focus versus Admiral Insurance Company.
judges: Noonan, Wardlaw, Paez